cle refers to Mexicans; and the 9th article speaks of "Mexicans" only, and provides, that those who do not preserve the character of Mexican citizens shall be subsequently incorporated into, and become entitled to all the rights of citizens of the United States. Naturalized citizens are nowhere included eo nomine, within the provisions of the treaty; and in the opinion of the court, it was not intended to include them. This construction of the treaty is sought to be defeated by the assumption, that the change in the political relations of the inhabitants of the ceded territory was contemplated to be made by the treaty with their consent by giving to them the right of election; hence, that it is to be reasonably concluded that naturalized citizens were intended to be included in the term "Mexicans." The answer is, first, it is a violence to the language of the treaty so to construe it; secondly, the allegiance of the naturalized citizen was not a subject of transfer between the contracting parties; and thirdly, the argument surrenders the whole question: because if the defendant was included in the treaty, his consent was essential to entitle him to exercise the right of election. This is the very question found by the jury on the trial of the issue of election or no election, upon evidence the court considers competent on the trial of such an issue. In a word, if the defendant Forbes, a naturalized citizen of Mexico, is to be brought within the provisions of the treaty because he consented to them, then his consent, involving intention and election, is an issuable fact which has been found against defendants by the jury. But in the opinion of the court, the election was given only to Mexicans who remained in the ceded territory longer than one year after the date of the treaty, who were during that interval to select to retain Mexican rights, or be considered citizens of the United States. Both governments had the right so to negotiate in regard to Mexicans; but in relation to the defendant Forbes, a naturalized citizen, his voluntary allegiance might be released by Mexico—not transferred. On his release, he was remitted to his original status of a British subject, derived from his birth; and the courts know no principle of law which would authorize the government of the United States to compel the transfer of the defendant's voluntary allegiance from Mexico to themselves. The contracting parties did not intend to do so. The court considering the defendant without the provisions of the treaty, his claim to be a citizen of the United States under them cannot be sustained; and he stood at the execution of the treaty, and now stands, where his acts and declarations and original status have placed him—an alien, and subject of Great Britain.

The motion to set aside the verdict in this case, must be overruled.

TOBIN, The ELLEN. See Case No. 4,379.
TOBY (GOODYEAR v.). See Case No. 5,585.

---

## Case No. 14,071.
### TOBY v. RANDON.
[6 West. Law J. 218.]
District Court, D Texas. 1849.[1]
#### SLAVERY IN TEXAS.

Thomas Toby sued David Randon on two promissory notes, amounting to $3,500. The defendant contended that the money was not justly due, as the property he received for the notes was slaves, natives of Africa, who were brought through Cuba contrary to the laws of Spain, and taken to Texas in 1835, in violation of the laws of Mexico. The plaintiff contended that at the time of the Revolution the negroes were held in slavery, their condition was fixed by the constitution of the republic of Texas of 17th March, 1846.

WATROUS, District Judge, sustained the plea of the defendant, and gave judgment in his favor.

[The cause was carried by writ of error to the supreme court, where the judgment of this court was affirmed, with costs. 11 How. (52 U. S.) 493.]

---

## Case No. 14,072.
[Ex parte TOCHMAN.
[1 Hayw. & H. 268.][2]
Circuit Court, District of Columbia. May 22, 1847.
##### PRACTICE AT LAW—ORIGINAL PAPERS—LEAVE TO WITHDRAW—COPIES.

The general rule that the original papers filed in a suit shall not be withdrawn without leaving attested copies does not apply to a case in which there are no parties litigant before the court, and the court sees no use in retaining them.

At law.

Motion to withdraw papers filed with his answer to Mr. Bradley's information.

On the 19th of May, 1847, after THE COURT had given its opinion in regard to the information given by Mr. Bradley to the court containing certain charges against Mr. [Gaspard] Tochman, but not asking for any specific remedy or proceeding against him, Mr. Tochman moved for leave to withdraw the papers which he had filed with and referred to in his answer to those charges, THE COURT having decided that the case did not in his opinion call for the exercise of its summary jurisdiction. As the information did not ask for any specific remedy, but left the subject entirely to the discretion of the court, it seems to be a question between Mr. Tochman and the court only whether the court shall permit the papers filed by him

---

[1] [Affirmed in 11 How. (52 U. S.) 493.]
[2] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]